

FILED & ENTERED

NOV 17 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| In re: | Case No. 2:14-bk-23301-RK |
| DOMUN LOCIS LLC, | Chapter 11 |
| Debtor. | Adversary No.  2:14-ap-01594-RK |
| | **MEMORANDUM DECISION ON VARIOUS MOTIONS OF DEBTOR AND CREDITOR LLOYDS TSB BANK PLC** |

Pending before the court are various motions by Debtor Domun Locis LLC ("Debtor") and Creditor Lloyds TSB Bank plc ("Lloyds") in the main bankruptcy case and in the adversary proceeding brought by Debtor against Lloyds, which were set for hearing on October 22, 2014.  The court has found that because the material facts necessary to resolve these motions are not in dispute, there is no need to proceed with the evidentiary hearings for these matters and that further hearings are no longer necessary because the parties have fully briefed these matters and the court has fully heard the oral arguments of the parties at prior hearings and additional argument would not be helpful.  Accordingly, the court dispenses with the evidentiary hearings and further oral argument on these matters and takes the matters under submission, and issues this decision resolving these matters.

1    These motions are: (1) Debtor's Motion for the Entry of an Order: (I) Authorizing

2    Debtor to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; and (II) Granting

3    Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361 and

4    363, 2:14-bk-23301-RK, ECF 3; (2) Debtor's Motion to Approve Residential Lease

5    Agreements, 2:14-bk-23301-RK, ECF 2; (3)  Lloyds's Motion for (A) Relief From the

6    Automatic Stay Under 11 U.S.C. Section 362 (Real Property), and (B) Relief from

7    Turnover Under 11 U.S.C. Section 543 by Prepetition Receiver or Other Custodian

8    ("First Motion for Relief from Stay"), 2:14-bk-23301-RK, ECF 11; (4) Lloyds's Motion for

9    Protective Order Limiting the Scope of Discovery, 2:14-bk-23301-RK, ECF 46; (5)

10    Lloyds's Motion for Relief From The Automatic Stay Under 11 U.S.C. Section 362

11    (Action in Nonbankruptcy Forum) ("Second Motion for Relief from Stay"), 2:14-bk-

12    23301-RK, ECF 57; and (6) Lloyds's Motion to Dismiss Adversary Proceeding number

13    2:14-ap-01594-RK, brought by Debtor ("Motion to Dismiss").

14    **1.  Procedural and Factual History**

15    **a.  The Facts**

16    The relevant facts material to the motions before the court are undisputed and

17    straightforward.  At issue are three parcels of real property listed by Debtor on its

18    bankruptcy schedules as assets of its bankruptcy estate: (1) the "Strand Property"

19    located at 1614-1618 The Strand, Hermosa Beach, California 90254; (2) the "North

20    Flores Property," located at 1308 North Flores Street, West Hollywood, California

21    90069; and (3) the "Vista Chino Property," located at 424 West Vista Chino, Palm

22    Springs, California  92262 (the three properties are collectively known as "the

23    Properties").  *Adversary Complaint,* 2:14-ap-01594-RK, ECF 1 at ¶ 8; *Debtor's*

24    *Opposition to Lloyds Motion for Relief from Stay,* 2:14-bk-23301-RK, ECF 34 at 7:14-

25    18.  Debtor claims ownership of the Properties.  *Id.; Debtor's Opposition to Lloyds*

26    *Motion to Dismiss Adversary Proceeding,* 2:14-ap-01594-RK, ECF 15 at 3:26-4:3.

27    The Strand Property and the North Flores Property are located in Los Angeles

28    County, and the Vista Chino Property is located in Riverside County.  Debtor is a

2

1   California limited liability company which was formed on June 13, 2012, and is owned

2   100 percent by Michael Kilroy ("Kilroy").  *Adversary Complaint,* 2:14-ap-01594-RK, ECF

3   1 at ¶ 6; *Debtor's Opposition to Lloyds Motion to Dismiss Adversary Proceeding,* 2:14-

4   ap-01594-RK, ECF 15 at 3:24-25.  Kilroy is the principal of Debtor.  *Adversary*

5   *Complaint,* 2:14-ap-01594-RK, ECF 1 at ¶ 10; *Debtor's Opposition to Lloyds Motion for*

6   *Relief from Stay,* 2:14-bk-23301-RK, ECF 34 at 8:9-10.

7       In or around December 2006 to May 2007, Kilroy took out loans from Lloyds,

8   borrowing an aggregate amount of about $9 million, and then as the owner of the

9   Properties, gave trust deeds on the Properties to secure repayment of the loans (the

10  "Loans").  *Adversary Complaint,* 2:14-ap-01594-RK, ECF 1 at ¶ 12; *Debtor's Opposition*

11  *to Lloyds Motion for Relief From Stay,* 2:14-bk-23301-RK, ECF 34 at 8:26-27.  Kilroy

12  stopped making interest payments on the Loans in April 2009.  *Adversary Complaint,*

13  2:14-ap-01594-RK, ECF 1 at ¶ 20; *Debtor's Opposition to Lloyds Motion for Relief From*

14  *Stay,* 2:14-bk-23301-RK, ECF 34 at 10:26-27.  Kilroy contends that Lloyds has charged

15  him significantly more interest than permitted under the loan documents.  *Id.; Debtor's*

16  *Opposition to Lloyds Motion to Dismiss Adversary Proceeding,* 2:14-ap-01594-RK, ECF

17  15 at 4:7-6:7.

18      On November 12, 2011, Lloyds filed complaints for injunctive relief and

19  appointment of a receiver against Michael Kilroy regarding the loans on the Strand and

20  North Flores Properties in the Superior Court of California, County of Los Angeles ("Los

21  Angeles Superior Court").  *Adversary Complaint,* 2:14-ap-01594-RK, ECF 1 at ¶ 21;

22  *Debtor's Opposition to Lloyds Motion for Relief from Stay,* 2:14-bk-23301-RK, ECF 34

23  at 11:2-9; *Debtor's Opposition to Lloyds Motion to Dismiss Adversary Proceeding,* 2:14-

24  ap-01594-RK, ECF 15 at 6:9-23.  On December 1, 2011, the Los Angeles Superior

25  Court entered an order granting Lloyds's ex parte application for appointment of a rents

26  and profits receiver and related relief, including a temporary restraining order.  *Id.*

27  Since that time, Robert C. Warren III, the receiver, has had possession of the Strand

28  Property and the North Flores Property and has been collecting rent from both

1    properties.  *Id.*  By order entered on January 6, 2012, the Los Angeles Superior Court

2    confirmed the appointment of the receiver.  *Id.*

3          On May 21, 2014, Lloyds filed amended complaints in these actions in the Los

4    Angeles Superior Court to, among other things, add Debtor as a defendant and further

5    add a judicial foreclosure cause of action against Kilroy and Debtor.  *Debtor's*

6    *Opposition to Lloyds Motion to Dismiss Adversary Proceeding,* 2:14-ap-01594-RK, ECF

7    15 at 6:24-28.  The amended complaints in these actions alleged causes of action for

8    appointment of a receiver, accounting and specific performance of the rents and profits

9    clause, injunctive relief, breach of contract and judicial foreclosure.  *Id.*  Kilroy filed

10   amended cross-complaints against Lloyds for fraud and deceit, negligent

11   misrepresentation, tortious breach of the implied covenant of good faith and fair

12   dealing, breach of contract, violation of the California unfair competition law, violation of

13   Hong Kong law, Section 108 of the Securities and Futures Ordinance Cap 571, and

14   declaratory and injunctive relief.  *Id.* at 7:1-6.

15         In or about April 2012, Lloyds filed a complaint for the appointment of a receiver,

16   accounting and specific performance of the rents and profits clause, injunctive relief,

17   and judicial foreclosure and deficiency against Kilroy regarding the loans on the Vista

18   Chino Property in Superior Court of California, County of Riverside ("Riverside Superior

19   Court").  *Adversary Complaint,* 2:14-ap-01594-RK, ECF 1 at ¶ 25; *Debtor's Opposition*

20   *to Lloyds Motion for Relief From Stay,* 2:14-bk-23301-RK, ECF 34 at 11:10-16; *Debtor's*

21   *Opposition to Lloyds Motion to Dismiss Adversary Proceeding,* 2:14-ap-01594-RK, ECF

22   15 at 7:9-19.  On May 1, 2012, the Riverside Superior Court entered an order granting

23   Lloyds's ex parte application for a rents and profits receiver and related relief.  *Id.*

24   Since that time, the receiver, Mr. Warren, has had possession of the Vista Chino

25   Property.  *Id.*  The Riverside Superior Court confirmed the appointment of the receiver

26   in or about June 2012.  *Id.*  Debtor is not a party to the Riverside Superior Court action.

27   *Id.*

28         On July 13, 2012, Kilroy transferred his interests in the Properties to Debtor.

1    *Adversary Complaint,* 2:14-ap-01594-RK, ECF 1 at ¶ 28; *Debtor's Opposition to Lloyds*

2    *Motion to Dismiss Adversary Proceeding,* 2:14-ap-01594-RK, ECF 15 at 7:24-8:2.  As

3    alleged by Debtor, it is the owner of the Properties, apparently based on these transfers

4    from Kilroy to it.  *Id.* at ¶¶ 8 and 28 and Exhibit C attached thereto (copies of grant

5    deeds transferring Strand and North Flores Properties from Kilroy to Debtor); *Debtor's*

6    *Opposition to Lloyds Motion to Dismiss Adversary Proceeding,* 2:14-ap-01594-RK, ECF

7    15 at 7:23-8:2.

8         **b.  Procedural History in This Case**

9         On July 11, 2014, Debtor filed its voluntary petition for relief under Chapter 11 of

10    the Bankruptcy Code.  *Petition,* 2:14-bk-23301-RK, ECF 1.  On July 25, 2014, Debtor

11    filed its Summary of Schedules and Schedules, listing the Properties as assets of the

12    bankruptcy estate, and valuing the Properties at $14,470,000.  *Summary of Schedules*

13    *and Schedules,* 2:14-bk-23301-RK, ECF 23 at 2.

14         On July 14, 2014, Debtor filed a Motion for Cash Collateral and Adequate

15    Protection. *Motion for the Entry of an Order: (I) Authorizing Debtor to Utilize Cash*

16    *Collateral Pursuant to 11 U.S.C. § 363; and (II) Granting Adequate Protection to Pre-*

17    *Petition Secured Parties Pursuant to 11 U.S.C. §§ 361 and 363,* 2:14-bk-23301-RK,

18    ECF 3.  On July 14, 2014, Debtor filed a Motion to Approve Residential Lease

19    Agreements. *Motion to Approve Residential Lease Agreements,* 2:14-bk-23301-RK,

20    ECF 2.  Lloyds filed an opposition to both the Motion for Cash Collateral and the Motion

21    to Approve Residential Lease Agreements on July 22, 2014.  2:14-bk-23301-RK, ECF

22    15.

23         On July 18, 2014, Lloyds filed a Motion for Relief from Stay on grounds that

24    Debtor's Chapter 11 bankruptcy case was filed in bad faith. *Motion for (A) Relief from*

25    *the Automatic Stay under 11 U.S.C. § 362 (Real Property) and (B) Relief from Turnover*

26    *under 11 U.S.C. § 543 by Prepetition Receiver or Other Custodian,* 2:14-bk-23301-RK,

27    ECF 11.

28         On August 18, 2014, Lloyds filed a Motion for Protective Order Limiting the

1 Scope of Discovery in response to discovery requests propounded by Debtor in relation

2 to Lloyds Motion for Relief from Stay (Real Property), the Motion for Cash Collateral,

3 and the Motion to Approve Residential Lease Agreements. *Motion for Protective Order*

4 *Limiting the Scope of Discovery,* 2:14-bk-23301-RK, ECF 46.

5       On August 26, 2014, Lloyds filed a Second Motion for Relief from Stay. *Motion*

6 *for Relief from the Automatic Stay under 11 U.S.C. § 362 (with supporting declarations)*

7 *(Action in Nonbankruptcy Forum),* 2:14-bk-23301-RK, ECF 57.

8       On September 10, 2014, Debtor initiated an adversary proceeding, number 2:14-

9 ap-01594-RK. The adversary complaint named Lloyds as a defendant and pleaded two

10 claims for relief: (1) Declaratory Relief that the Real Properties are Property of the

11 Estate Pursuant to 11 U.S.C. § 541; and (2) Objection to Claim Pursuant to Federal

12 Rule of Bankruptcy Procedure 3007. *Adversary Complaint,* 2:14-ap-01594-RK, ECF 1.

13 Lloyds filed a Motion to Dismiss the Adversary Proceeding on September 19, 2014.

14 *Motion to Dismiss Adversary Proceeding,* 2:14-ap-01594-RK, ECF 9.

15 **1.  Under California Law the Properties Are Not Property of the Bankruptcy Estate**

16       **a.  State Law Determines Whether a Debtor Has Interest in Property**

17       State law determines whether a particular right, power, or interest is "property"

18 and the nature and extent of the debtor's interest therein. *Butner v. United States*, 440

19 U.S. 48, 54 (1979). Based on the *Butner* principle, the Ninth Circuit in *In re Pettit*, 217

20 F.3d 1072, 1078 (9th Cir. 2000) described the applicable law governing the bankruptcy

21 court's determination whether a property interest was included in a bankruptcy estate of

22 a debtor subject to administration under the Bankruptcy Code: "Although the question

23 whether an interest claimed by the debtor is 'property of the estate' is a federal question

24 to be decided by federal law, bankruptcy courts must look to state law to determine

25 whether and to what extent the debtor has any legal or equitable interests in property

26 as of the commencement of the case." 217 F.3d at 1078, *citing Butner v. United*

27 *States,* 440 U.S. at 54-55; *accord, In re First Protection, Inc.*, 440 B.R. 821 (9th Cir.

28 BAP 2010). Thus, the court is to look to state law, here, California law, to determine

1   whether Debtor had any interest in the Properties, real property situated in California, at

2   the commencement of the bankruptcy case to be considered property of the bankruptcy

3   estate under 11 U.S.C. § 541.

4         As the Ninth Circuit also noted in *In re Pettit,* "[u]nder California law, property is

5   defined as "the thing of which there may be ownership." *In re Pettit,* 217 F.3d at 1078,

6   *citing,* California Civil Code § 654.  The Ninth Circuit further noted in *Pettit*: "The

7   ownership is the right of one or more persons to possess and use it to the exclusion of

8   others." *Id.*  Under California law, property includes real or immovable property,

9   consisting of land, that which is affixed to land, that which is incidental or appurtenant to

10  land and that which is immovable by law.  California Civil Code, §§ 657-662.  There is

11  no dispute that the Properties are real or immovable property within the meaning of

12  California Civil Code § 658.

13        Ownership of property in California is also defined in provisions of the California

14  Civil Code.  California Civil Code §§ 669 *et seq.*  California Civil Code § 678 provides

15  that the ownership of property is either "absolute" or "qualified."  California Civil Code

16  §679 defines "absolute ownership" as follows: "The ownership of property is absolute

17  when a single person has the absolute dominion over it, and may use it or dispose of it

18  according to his pleasure, subject only to general laws."  California Civil Code § 680

19  defines "qualified or base ownership" as follows: "The ownership of property is qualified:

20  1. When it is shared with one or more persons; When the time of enjoyment is deferred

21  or limited; 3. When the use is restricted."  California Civil Code § 681 defines "sole or

22  several ownership" as follows: "The ownership of property by a single person is

23  designated as a sole or several ownership."  It is undisputed that Kilroy had "sole or

24  several ownership" of the Properties when he purportedly transferred the Properties.

25  The dispute here is whether Kilroy, as the sole owner, still had the power to transfer the

26  Properties under California law once the court-appointed receiver took over possession

27  of the Properties pursuant to the orders of the Los Angeles and Riverside Superior

28  Courts.

1        **b. California Law Recognizes that Property Subject to a Court-Appointed**

2            **Receivership Is *In Custodia Legis***

3       As discussed above, the undisputed facts indicate that at the request of Lloyds,

4 the Los Angeles and Riverside Superior Courts appointed Mr. Warren as the receiver

5 for the Properties and had possession of the Properties before Kilroy transferred his

6 interests in the Properties to Debtor and before Debtor filed its Chapter 11 bankruptcy

7 case.  The issue before the court which has been the subject of briefing and oral

8 argument on these matters is whether or not Kilroy's transfers of his interests in the

9 Properties, which are in the possession of the court-appointed receiver, validly

10 conveyed ownership of the Properties to Debtor and are therefore property of the

11 bankruptcy estate under 11 U.S.C. § 541 when Debtor filed its bankruptcy petition.  To

12 resolve this issue of whether Debtor had any legal or equitable interests in the

13 Properties as of the petition date, the court must also consider the California law of

14 receiverships.

15       In *Kreling v. Kreling,* 118 Cal. 421 (1897), the California Supreme Court

16 observed: "A receiver is an officer or representative of the court, appointed to take the

17 charge and management of property which is the subject of litigation before it, for the

18 purpose of its preservation and ultimate disposition according to the final judgment

19 therein."  118 Cal. at 422, 50 P. at 550, *cited in,* 6 Witkin, *California Procedure,*

20 Provisional Remedies, Receivers, § 419 at 357 (5th ed. 2008).  The appointment of a

21 receiver is an equitable remedy.  55 Cal.Jur.3d, Receivers, § 1 at 8 (2012), *citing,*

22 *McLane v. Placerville & S.V.R. Co.,* 66 Cal. 606 (1885).

23       The statutory provisions governing the appointment of receivers and defining

24 their functions and powers are set forth in California Code of Civil Procedure §§ 564

25 through 570.  Pursuant to California Code of Civil Procedure § 564(a), a receiver may

26 be appointed by the court in which an action or proceeding is pending, in any case in

27 which the court is empowered by law to appoint a receiver.  *See also,* 6 Witkin,

28 *California Procedure,* Provisional Remedies, Receivers, § 419 at 358.  "Generally, the

1  functions and powers of a receiver are controlled by statute, by order of appointment,

2  and by the court's subsequent orders."  *City of Santa Monica v. Gonzalez,* 43 Cal.4th

3  905, 930, 76 Cal.Rptr.3d 483, 502 (2008)(citations omitted).  California Code of Civil

4  Procedure § 568 provides:

5  > The receiver has, under the control of the Court, power to
   > bring and defend actions in his own name, as receiver; to
6  > take and keep possession of the property, to receive rents,
   > collect debts, to compound for and compromise the same, to
7  > make transfers, and generally to do such acts respecting the
   > property as the Court may authorize.

8

9  California Code of Civil Procedure § 568.5 further provides:  "A receiver may, pursuant

10  to an order of the court, sell real or personal property in the receiver's possession. . .

11  The sale is not final until confirmed by the court."

12  "It has been long recognized that a receiver is an agent and officer of the

13  appointing court."  *City of Santa Monica v. Gonzalez,* 43 Cal.4th at 930, 76 Cal.Rptr.3d

14  at 502*, citing inter alia, Lesser & Son v. Seymour,* 131 Cal.2d 494, 499, 218 P.2d 536

15  (1950).  "As an officer of the court, a receiver is not an agent of any particular party to

16  the action, but represents all persons interested in the property."  *City of Santa Monica

17  v. Gonzalez,* 43 Cal.4th at 930, 76 Cal.Rptr.3d at 502 (citation omitted).  "Property in

18  receivership remains under the court's control and continuous supervision, and the

19  importance of such supervision cannot be overstated."  *Id.* (citation omitted).  *Id.*

20  (citation omitted); *see also, Lesser & Son v. Seymour,* 131 Cal.2d at 499, 218 P.2d 536

21  (citations omitted).  Thus, California jurisprudence has long recognized that property

22  subject to a court-appointed receivership is *in custodia legis,* that is, it is in the custody

23  of the court itself.  *Id.; Pacific Railway Co. v. Wade*, 91 Cal. 449, 455, 27 P. 768 (1891);

24  *Tapscott v. Lyon*, 103 Cal. 297, 305-306 (1894); 1 Ahart, *California Practice Guide:

25  Enforcing Judgments and Debts,* ¶ 4:937 at 4-170.11 (2014).

26  In *Pacific Railway Co. v. Wade,* the California Supreme Court held that a party

27  seeking relief as to property of an insolvent debtor held by a receiver must petition the

28  court in which the receiver is acting because the property held by the receiver is held

1  under court supervision *in custodia legis*. 91 Cal. at 455-456.  The facts involved the

2  Pacific Railway Co., a railway company running a street railroad operated by wire

3  cables ("cable car company"), which was an insolvent debtor whose assets were in

4  possession of a receiver appointed by the superior court upon the petition of a

5  judgment creditor. *Id.* at 450-451.  Another railway company, the Los Angeles

6  Consolidated Electric Railway Company ("electric car company"), petitioned the court to

7  allow it to operate over and on some of the cable car company's tracks pursuant to

8  provisions of the California Civil Code which governed the joint use of railroad tracks on

9  city streets and the proper method of determining compensation when tracks are jointly

10  used or are intersected.  *Id.* at 451-453.  One provision of the Civil Code required

11  railway companies that jointly use a street to pay equal shares for the construction of

12  the track while another provision required any railway company building track

13  intersecting with another company's track to try to come to an equitable agreement as

14  to compensation.  *Id.* at 452-453.  At the hearing on the electric car company's petition,

15  the petitioners, apparently creditors of the cable car company, objected to the

16  proceedings by the superior court on grounds that the court had no authority to grant

17  the relief requested.  *Id.* at 451.  The superior court overruled the objection, deciding

18  that it had jurisdiction to determine the amount of the compensation for the joint use of

19  the cable car company's tracks by the electric car company and setting the petition for

20  further hearing.  *Id.*  Thereupon, the petitioners filed an application for an alternative writ

21  of prohibition, which was granted by the California Supreme Court.  *Id.*  As stated by the

22  California Supreme Court, "[t]he question to be determined is, simply, whether the

23  court, which, through its receiver has the custody and control of the insolvent

24  corporation's property, has the power to determine the compensation….or whether the

25  electric [car] company must treat with the cable [car] company, and upon failure to

26  agree as to the amount to be paid, bring an action therefor against the receiver with the

27  permission of the court."  *Id.* at 453.

28

1      The California Supreme Court in *Pacific Railway Co.* first determined that the

2   electric car company had the absolute right under state law to use the cable car

3   company's track upon payment of the applicable compensation.  *Id.* at 454.  The

4   California Supreme Court then observed that "the question before us whether the

5   [superior court] has the right to fix the amount of damages or compensation to be paid

6   by the electric [car] company is a simple one."  *Id.*  In answering this specific question of

7   the superior court's jurisdiction in a receivership action, the California Supreme Court

8   discussed the general principles of receivership law in California as follows:

> **The property of the cable [car] company is *in custodia legis*.**
> **The receiver is indifferent between the parties.  His possession**
> **is the possession of the court, for the benefit of all persons**
> **interested, whether named as parties in the action or not, and**
> **it cannot be disturbed without the consent of the court.  No**
> **one claiming a right paramount to that of the receiver can**
> **assert it in any action without the permission of the court.  No**
> **sale can take place, no debt can be paid, no contract can be**
> **made, which does not receive the sanction of the court.**  The
> receiver, with permission of the court, can do anything the
> corporation might have done to make the most out of the assets in
> his hands; it has been held that in a proper case he may settle
> disputed claims, and compromise with debtors of the corporation;
> he may lease other lines of railways, and operate them; he may
> complete construction of unfinished lines of railroad, and negotiate
> loans for the payment of the cost thereof; he may enter into
> contracts by the terms of which the owners of other roads may use
> the road under his control at given rates; and he may charge the
> rates agreed upon prior to his appointment, between the company
> he represents and another railroad corporation.

20   *Id.* at 455 (emphasis added), *citing inter alia,* California Code of Civil Procedure § 568

21   and *Wiswall v. Sampson,* 55 U.S. 65 (1852).  As to the specific merits of the case, the

22   California Supreme Court in *Pacific Railway Co.* concluded:

> In the case before us, the electric [car] company has the right,
> under the statute and its franchise, to use the tracks of the cable
> [car] company upon payment of one half of the cost of the
> construction thereof.  The only question to be determined is, What
> is the amount due the cable [car] company?  It is like any other
> claim for damages or compensation in favor of a corporation whose
> property is in the hands of a receiver, and is to be determined in the
> same way.  As to the manner of determining such question, there
> has been some discordance of opinion among the judges, but so
> far as we have investigated the subject, there has been no conflict
> of decision, the cases all hold that while it is, under certain

1
2
3
4
5

circumstances, proper to direct the prosecution of an action at law
against the receiver to be paid, the better and more common
recognized practice is to apply for relief by petition to the court in
which the receiver is acting.  The rule applies to all cases of
damages to person or property, whether occasioned prior or
subsequent to the appointment of the receiver.  Any party deeming
himself aggrieved by the judgment of the court has the right of
appeal.

6  *Id.* at 455-456 (citations omitted).  The California Supreme Court in *Pacific Railway Co.*

7  further rejected the petitioner's argument that the receivership court's determination of

8  compensation or damages to be paid as to property of the debtor would deprive them of

9  the right to jury trial because a receivership action is a case of equity jurisdiction for

10  which there is no common law right to a jury trial.  *Id.* at 456.  Accordingly, the California

11  Supreme Court denied the application for a writ of prohibition and discharged the

12  alternative writ.  *Id.* at 457.

13       In *Tapscott v. Lyon,* 103 Cal. 297 (1894), the California Supreme Court held that

14  a court appointed receiver could not be sued for conversion of assets he transferred in

15  his capacity as a receiver because he was holding the property *in custodia legis.*  203

16  Cal. at 305-306.  The facts involved two debtors who were operating a general

17  merchandise business but were insolvent, having debts of $15,000 and assets worth

18  only $8,000. *Id.* at 301-302.  The debtors transferred all of their assets to a buyer who

19  was fully aware of their insolvency for $2,000.  *Id.*  The creditors of the debtors

20  instituted state law insolvency proceedings under the Insolvent Act of 1880 in the

21  superior court, which appointed a receiver to take charge of the assets of the debtors.

22  *Id.* at 302.  The receiver then took possession of the assets after he demanded them

23  from the buyer, who voluntarily relinquished the assets to the receiver.  *Id.* at 302-303.

24  The buyer then filed an application in the superior court against the receiver for turnover

25  of the assets to him, which application was denied by the superior court.  *Id.* at 303.

26  Pursuant to court order, the receiver sold the assets and turned over the proceeds to a

27  court appointed assignee, who distributed the sales proceeds to creditors in payment of

28  the debts owed by the debtors.  *Id.* at 304.  The buyer then brought an action in the

1    superior court against the receiver for wrongful taking and conversion, alleging

2    trespass, which action was tried to a jury, which rendered a verdict in favor of the buyer

3    and against the receiver. *Id.* at 304-305.  The California Supreme Court held that the

4    receiver "did not take the goods as a trespasser, and has disposed of them under

5    express direction of this court." *Id.* at 307.  In so holding, the court distinguished

6    between a sheriff seizing property in the possession of a judgment debtor on behalf of a

7    creditor pursuant to a writ of attachment and a receiver taking property pursuant to

8    court order.  *Id.* at 307-308.  The sheriff is the agent of the judgment creditor, and the

9    property remains presumptively the debtor's, and third parties claiming title can sue the

10   sheriff and recover the property if they can show title.  *Id.* at 397.  In contrast, the

11   receiver is the agent of the court, holding property for the court, and cannot release

12   property to a third party without leave of court.  *Id.* at 307-308.

13          In drawing this contrast between the sheriff acting as the agent of creditors and

14   the receiver acting as the agent of the court, the California Supreme Court observed in

15   *Tapscott*:

16          The sheriff is the agent of the creditor.  He commits no contempt if
       he refuses to levy upon which he has reason to believe do not
17       belong to the debtor.  He may release them to a claimant without
       being guilty of a contempt.  He simply takes the responsibility.  The
18       receiver has no such discretion.  If the goods are described, and
       are in possession of the party whose property he is directed to take
19       into possession, or are voluntarily delivered to him by the person
       having them, he must take them on pain of incurring a contempt,
20       and, having thus taken them, he cannot surrender them to an
       adverse claimant without leave of the court, which is the real
21       custodian.

22   *Id.* 307-308. (citations omitted)   In describing the role and powers of a court appointed

23   receiver, the court also stated:

24          But if [the receiver] is lawfully in possession of property claimed to
       belong to the insolvent, he will be regarded as the servant of the
25       court, and even adverse claimants will not be justified in disturbing
       his possession without leave of the court.  Nor can be he made
26       responsible in an action for the value of such property by such
       person.  The custody is that of the court.   The receiver has no right
27       to deliver such property to an adverse claimant without leave of the
       court, and, therefore, cannot be held responsible for not doing so.

28

13

1   *Id.* at 306.

2       Citing *Pacific Railway Co. v. Wade* and *Tapscott v. Lyon,* one California treatise

3   on enforcement of judgments and debts has stated: "The appointing court has custody

4   over all property in the receiver's possession and has plenary jurisdiction to resolve

5   disputes concerning such property.  Thus, only the court may authorize a transfer or

6   encumbrance of the property."  1 Ahart, *California Practice Guide: Enforcing Judgments*

7   *and Debts*, ¶ 4:937 at 4-170.11, *citing, Pacific Railway Co. v. Wade*, 91 Cal. at 455, 27

8   P. 768; *Tapscott v. Lyon*, 103 Cal. at 305-306.

9       The California case law following *Pacific Railway Co. v. Wade* and *Tapscott v.*

10  *Lyon* is consistent.  For example, in *Withington v. Shay,* 47 Cal. App. 2d 68 (1941), the

11  district court of appeal held that a judgment creditor could not execute a judgment levy

12  on surplus proceeds of a sale of property in the hands of the sheriff under court

13  supervision in an action for judicial foreclosure of a mechanics lien.  *Id.* at 73-75.  The

14  surplus proceeds were not subject to a judgment levy because the sheriff held the

15  funds on behalf of the court to determine entitlement to the proceeds after the sale, and

16  thus, the funds were held *in custodia legis* and immune from attachment.  *Id.* at 74-75.

17  The court stated:

18      The funds, therefore, in the sheriff's hands were in his hands as
        agent of the court in the foreclosure proceeding.  They were *in*
19      *custodia legis.*  Being *in custodia legis,* they were not subject to
        attachment or writ of execution.
20

21  *Id.* at 74, *citing inter alia, Clymer v. Willis,* 3 Cal. 363 (1853).  Thus, under the above-

22  discussed authorities, California law vests the power to dispose of property subject to a

23  receivership in the receiver alone, and that power is subject to prior authorization from

24  the appointing court.

25      The case law in the federal courts reflects the common law doctrine of *in*

26  *custodia legis* as represented in the California jurisprudence of receiverships discussed

27  above that the property is held by a court-appointed receiver under court supervision *in*

28

14

1  *custodia legis.*[1] In *Wiswall v. Sampson,* 55 U.S. 52, 14 L.Ed. 322 (1852)(interpreting

2  Alabama law), the United States Supreme Court rejected a claim that the possession of

3  property by a court-appointed receiver does not invalidate an execution sale because

4  the sale did not disturb the receiver's possession.  *See also, In re Technical Land, Inc.,*

5  172 B.R. 429, 432 (Bankr. D.D.C.), *affirmed*, 175 B.R. 792 (D.D.C. 1994).  The

6  Supreme Court in *Wiswall,* in rejecting this claim, stated:

7          It has been argued, that a sale of the premises on execution and
         purchase, occasioned no interference with the possession of the
8          receiver, and hence no contempt of the authority of the court, and
         that the sale therefore, in such a case should be upheld.  But,
9          conceding the proceedings did not disturb the possession of the
         receiver, the argument does not meet the objection.  **The property
10          is a fund in court, to abide the event of the litigation, and to be
         applied in the payment of the judgment creditor, who has filed
11          his bill to remove any impediments in the way of his execution.
         And, in order to effectuate this, the court must administer it
12          independently of any rights acquired by third persons,
         pending the litigation.**

13

14  55 U.S. at 66 (emphasis added); *see also, In re Technical Land, Inc.,* 172 B.R. at 432.

15  Similarly, in *Hitz v. Jenks,* 185 U.S., 22 S.Ct. 598 (1902)(interpreting District of

16  Columbia law), the United States Supreme Court held that a sale of property in

17  receivership pursuant to a deed of trust by a court-appointed receiver who was also

18  trustee under the deed of trust was invalid and conferred no title because the property

19  was *in custodia legis* and the receivership court had not granted permission for the

20  sale.  *Id.; see also, In re Technical Land, Inc.,* 172 B.R. at 431.

21          In *North American Broadcasting, LLC v. United States,* 306 Fed. Appx. 371 (9th

22  Cir. 2008),[2] the plaintiff sued the Federal Trade Commission (FTC) to recover damages

23

---

24  [1]  Federal case law is not dispositive here, as the Debtor's property interests are defined by California
     state law under *Butner v. United States,* 440 U.S. at 54. *See Grayned v. City of Rockford,* 408 U.S.
25     104, 110, 92 S.Ct. 2294 (1972)(("[I]t is not within our power to construe and narrow state laws.").  The
     purpose of the citation and discussion of federal case law on the doctrine of *in custodia legis* is to
26     show that its principles are well-established in the general case law.

27  [2]  The Ninth Circuit's unpublished disposition in this case is not precedent except as provided in Ninth
     Circuit Rule 36-3, which provides that it is not restricted or prohibited from being cited since it is a
     post-2006 disposition pursuant to Fed. R. App. P. 32.1.  306 Fed. Appx. at 372 n. ***.

28

1  suffered as a result of actions of a court-appointed receiver.  The Ninth Circuit affirmed

2  the grant of summary judgment by the district court in favor of the FTC in part on

3  grounds that the FTC is not liable for the actions of the receiver as one of its employees

4  because a court-appointed receiver is not an employee of the FTC, but an officer of the

5  court.  *Id.* at 373.  In explaining the court–appointed receiver's role as an officer of the

6  court, the Ninth Circuit stated:

7         The FTC argues that a court-appointed receiver is not an employee
       of the FTC.  We agree.  A court-appointed receiver is an officer of
8       the court, appointed on behalf and for the benefit of all the parties
       having an interest in the property, not for the plaintiff or defendant
9       alone.  The property in his hands is in *custodia legis*; it is the court
       itself that has the care of the property in dispute.  The receiver is
10      but the creature of the court having no powers except such as are
       conferred upon him by the order of his appointment and the course
11      and practice of the court.

12  *Id., citing inter alia, Booth v. Clark,* 58 U.S. 322 (1854).

13         In *Matter of The Rubicon, Ltd.,* 331 F. Supp. 1307 (N.D. Cal. 1971), the district

14  court held that funds of a debtor in the possession of a bankruptcy trustee in a Chapter

15  XII arrangement proceeding under the Bankruptcy Act of 1898 were held under the

16  supervision of the bankruptcy court *in custodia legis* and could not be subjected to

17  garnishment pursuant to a writ of attachment issued by a state court against a debtor.

18  *Id.* at 1309.  The facts were that the debtor was a real estate investment business,

19  which was sued by a creditor in state court.  *Id.* at 1307.  Soon afterwards, the debtor

20  filed a petition for arrangement (reorganization) under Chapter XII of the Bankruptcy Act

21  in the bankruptcy court.  *Id.*  The bankruptcy referee appointed a trustee to manage the

22  assets of the debtor, including the collection of rents. *Id.*   However, after the debtor

23  conceded at a hearing before the bankruptcy referee that it was unable to obtain

24  postpetition financing necessary to an effective plan of arrangement, the bankruptcy

25  referee ordered that the bankruptcy case be dismissed, that the trustee file his final

26  account, and that jurisdiction be retained until the trustee's final account was filed and

27  heard before the district court.  *Id.* at 1307-1308   After dismissal of the bankruptcy

28  case, the creditor obtained a writ of attachment from the state court and requested the

1    bankruptcy referee to honor the state court garnishment under the writ of attachment,

2    but the bankruptcy referee refused and ordered the funds be paid to administrative

3    expenses and then to the holder of the senior trust deed on one of the debtor's

4    properties.  *Id.*  The creditor petitioned the district court for review, which affirmed the

5    bankruptcy referee's ruling.  *Id.* at 1308-1310.  The district court held that the funds in

6    possession of a bankruptcy trustee pursuant to a Chapter XII bankruptcy proceeding

7    are held under bankruptcy court supervision *in custodia legis* and are not garnishable

8    until the funds are disbursed by the trustee.  *Id.* at 1308, *citing, In re Argonaut Shoe*

9    *Co.,* 187 F. 784 (9th Cir. 1911) and *Gilbert v. Quimby,* 1 F. 111 (C.C.N.Y. 1880).  Since

10   the funds had not yet been disbursed by the trustee, they remained held by the trustee

11   *in custodia legis,* that is, under the custody of the bankruptcy court, and thus, not

12   attachable by process from a state court without consent of the bankruptcy court.  *Id.* at

13   1309.  In so holding, the district court in *The Rubicon* cited *In re Argonaut Shoe Co.,*

14   which in turn cited *Gilbert v. Quimby,* which stated regarding the holding that

15   bankruptcy dividends in the hands of a bankruptcy trustee are not attachable by state

16   court process until distribution:

> 17    That the dividend was not attachable on process from the state courts
>       would seem to be quite clear.  While in the hands of the assignee [in
> 18    bankruptcy], it would be part of the estate of the bankrupt in the
>       custody of the court.  It would not be held the property of the debtor,
> 19    but would only be property that would become his when he should get
>       it.  He could not maintain any suit against the assignee for it, nor obtain
> 20    it by any legal process other than application to the District Court
>       having control of the fund as a party to the proceedings in that court.
> 21    Money in the hands of a disbursing officer of the United States, due to
>       a private person, cannot be attached on process against such person
> 22    out of a state court, because the money will not be his, but will remain
>       the property of the United States until it is paid to him.
>
> 23

24   *Id.* at 1308, *quoting, Gilbert v. Quimby,* 1 F. at 113.  Then, the court in *The Rubicon*

25   quoted the statement of the Ninth Circuit in *In re Argonaut Shoe Co.*:

> 26    The reason of this doctrine seems to be that the court having the
>       money or property in its custody under the law holds it for some
> 27    purpose, of which that court is exclusive judge.  To permit property or
>       money thus held to be seized, attached, or garnisheed, would
> 28    therefore defeat the very purpose for which it is held, and in many

1
2    cases enable some other court to dispose of property or money, and
3    wholly divert it from the end or purpose for which possession has been
      taken.    A conflict of jurisdiction and decision would in many cases
      ensue.

4    *Id.* at 1308-1309, *quoting, In re Argonaut Shoe Co.,* 187 F. at 785-786, *quoting, In re*

5    *Cunningham,* Fed. Cas. No. 3,478, 6 F. Cas. 958 (D. Iowa 1879).  The holdings in *The*

6    *Rubicon* and *Argonaut Shoe Co.* were that state court attachment orders were

7    ineffective to attach to property held by a bankruptcy trustee under the supervision of

8    the bankruptcy court *in custodia legis.  Id.*

9        In *In re Keller,* 185 B.R. 796 (9th Cir. BAP 1995), the Bankruptcy Appellate Panel

10   of the Ninth Circuit held that the debtor in a pending Chapter 7 bankruptcy case had no

11   interest in the proceeds from the sale of a home ordered by a state family law court

12   which retained jurisdiction to adjust the distribution of those proceeds between the

13   spouses, including the debtor.  *Id.* at 802.  The facts were that a California family law

14   court entered a judgment dissolving the marriage of the debtor and his wife, and

15   ordered that the family residence be sold, with each spouse to receive an equal share

16   of the proceeds, subject to future adjustments by the family law court.  *Id.* at 797-798.

17   When the family residence was sold, the debtor's share of the sales proceeds was

18   insufficient to cover various support payments and attorneys' fees imposed by the

19   family law court on him, which reduced his share to zero.  *Id.* at 798.  The debtor filed a

20   Chapter 7 bankruptcy petition soon afterwards, and the Chapter 7 trustee then filed a

21   preference avoidance action pursuant to 11 U.S.C. §§ 547 and 550 to recover the

22   debtor's half of the family residence sale proceeds.  *Id.*  The bankruptcy court held that

23   the payments and penalties imposed by the family law court's orders against the

24   debtor's one-half share were avoidable preferences.  *Id.*  The Bankruptcy Appellate

25   Panel reversed, agreeing with the wife and her counsel that the debtor's "rights in the

26   proceeds were subject to adjustment and determination by the Family Law Court

27   pursuant to the final judgment of dissolution, and his rights in the proceeds therefore

28   could not vest until the court so decreed."  *Id.* at 799.  The Bankruptcy Appellate Panel

1   stated: "We agree with the appellants' essential premise that the debtor never

2   possessed a vested right to one half of the net sale proceeds [and c]onsequently,

3   adjustments made prior to distribution were not a transfer of 'an interest of the debtor in

4   property.'"  *Id.*  The family law court's judgment of dissolution dividing the marital

5   property and retaining jurisdiction over adjustments and distribution of sales proceeds

6   was *res judicata* and binding on the bankruptcy trustee as the successor-in-interest to

7   the debtor.  *Id.* at 800, *citing, Matter of Paderewski,* 564 F.2d 1353, 1356 (9th Cir.

8   1977).  Citing *Butner,* the Bankruptcy Appellate Panel stated that "[p]roperty interests

9   are created and defined by state law" and that in looking to state law to determine the

10  nature of the bankruptcy estate's property rights, "those rights were defined and

11  circumscribed by the judgment of the Family Law Court."  *Id., quoting, Butner v. United*

12  *States,* 440 U.S. at 55.  The Panel further stated in *Keller*:  "Once the Family Court

13  ordered the residence sold and retained jurisdiction to approve disbursement of the

14  proceeds, those proceeds were for all practical purposes held in *custodia legis* by that

15  court."  *Id., citing, Rosenthal v. Rosenthal,* 197 Cal.App.2d 289, 315 (1961).  The Panel

16  finally stated: "As such they were at all times subject to distribution pursuant to the

17  court's direction, beyond the reach of the debtor, alienation by his creditors, and were

18  not part of the bankruptcy estate."  *Id.* at 800.

19          **c. Any Transfer of Property *In Custodia Legis* Is Void**

20                  **i.  Applicable California Law Recognizes that Transfers of Property**

21                      ***In Custodia Legis* are Void**

22          The case law as discussed above has recognized that attempts to sell or transfer

23  interests in property held under court supervision *in custodia legis* are ineffective.

24  *Pacific Railway Co. v. Wade*, 91 Cal. at 455; *Tapscott v. Lyon*, 103 Cal. at 305-306;

25  *Withington v. Shay,* 47 Cal. App. 2d at 75; *North v. Evans*, 1 Cal. App. 2d 64, 68-69, 36

26  P.2d 133 (1934) ("It follows, from the premises that defendant has given us, that the

27  possession by the clerk was the possession of the law and that the subsequent

28  execution sales were of no effect."); *see also, Wiswall v. Sampson,* 55 U.S. at 66; *Hitz*

1   *v. Jenks,* 185 U.S. at 166; *North American Broadcasting, LLC v. United States,* 306

2   Fed. Appx. at  373; *In the Matter of The Rubicon, Ltd.,* 331 F. Supp. at 1309-1310; *In re*

3   *Keller*, 185 B.R. at 800 ("Once the Family Court ordered the residence sold and

4   retained jurisdiction to approve disbursement of the proceeds, those proceeds were for

5   all practical purposes held *in custodia legis* by that court.  As such, they were at all

6   times subject to distribution pursuant to the court's direction, beyond the reach of the

7   debtor, alienation by his creditors, and were not part of the bankruptcy estate.")(citation

8   omitted); *In re Technical Land, Inc.,* 172 B.R. at 432; 1 Ahart, *California Practice Guide:*

9   *Enforcing Judgments and Debts*, ¶ 4:937 at 4-170.11.  Thus, under these authorities,

10  any attempt to transfer an interest in property held *in custodia legis* is void and

11  ineffective, though none of these cases involved property held by a court-appointed

12  receiver, but other court-supervised parties or agents (e.g., clerk of the Superior Court.

13  the family law department of the Superior Court, the sheriff as the agent of the Superior

14  Court).

15          **ii.  Cases Holding that Transfers In Violation of a Receivership Order**

16                **Are Not Void Are Distinguishable or Were Wrongly Decided**

17          Debtor cites the majority opinion by Presiding Justice Langdon in *Mercantile*

18  *Trust Co. of San Francisco v. Sunset Rd. Oil Co.*, 50 Cal. App. 485, 494-495 (1920) for

19  the proposition that California law distinguishes between receiverships that are for the

20  sole benefit of one creditor and receiverships that are for the benefit of all creditors, and

21  that transfers without leave of court would only be void if the receivership was one for

22  the benefit of all creditors.  *Debtor's Opposition to Lloyds Motion to Dismiss Adversary*

23  *Proceeding,* 2:14-ap-01594-RK, ECF 15 at 13:13-14:17.  In *Mercantile Trust,* the facts

24  were that a lender, Mercantile Trust Co. of San Francisco, brought an action against the

25  borrower, Sunset Road Oil Co., for judicial foreclosure of a mortgage given to the

26  lender on certain real property and obtained the appointment of a receiver.  50 Cal.

27  App. at 486.   Several years later, the receiver filed a petition in the foreclosure to hold

28  the purchaser of the property at an execution sale, who had been an attorney for other

1  creditors of the borrower in a separate partition action, in contempt of court of the

2  receivership order for executing a sale of that property to collect a judgment in the

3  partition action. *Id.* at 487-489.  The receiver also sought an order permanently

4  enjoining the attorney from interfering or attempting to interfere with the receiver's

5  possession of the property or disposing or attempting to dispose of the property. *Id.*

6  The superior court made findings and entered an order in a summary proceeding

7  annulling, vacating and setting aside the execution sale and permanently enjoined the

8  purchaser from selling, encumbering or otherwise disposing of the property and

9  interfering, or attempting to interfere, with the receiver's possession of the property. *Id.*

10  at 490.  The district court of appeal reversed with two justices concurring in the decision

11  in a separate opinion. *Id.* at 486-507.  In the majority opinion, Presiding Justice Landon

12  stated:

13         We are, therefore, of the opinion that, both upon reason and authority,
           there is a clear distinction between a receivership in a lIquidation
14         proceeding, and one which is but a provisional remedy for the sole and
           exclusive benefit of the plaintiff, and we are also of the opinion that the
15         receivership in the present case falls within the latter class.  This being
           true, and a sale under execution not being an interference with the
16         possession of the receiver in the foreclosure action, the order of the
           court in that action annulling the deed to appellant and enjoining him
17         from selling, mortgage, pledging, or hypothecating or in any other way
           disposing of, or attempting to dispose of, attempting to dispose or, the
18         said real property was erroneous.

19  *Id.* at 498.

20         The distinction made by the majority in *Mercantile Trust* between one creditor

21  and multiple creditor receiverships has not been accepted by other courts.  *Mercantile*

22  *Trust* has never been cited by a California court and has apparently been cited only

23  once by a court outside the state in *In re Technical Land, Inc.*, 172 B.R. at 432, which

24  declined to follow it.[3]  The court in *Technical Land* concluded that although *Mercantile*

25  was not the law of its jurisdiction, the District of Columbia, the reasoning was "not

26

27  [3]  This observation was based on a search on Westlaw's KeyCite case citation program for cases citing
       *Mercantile* as of the date of this memorandum decision.

28

21

1    persuasive" in drawing a distinction between receiverships for the benefit of one

2    creditor and for all creditors, and held that the common law doctrine of *in custodia legis*

3    applied, including the United States Supreme Court's opinions in *Hitz v. Jenks,* 185

4    U.S. 155 (1902) and *Wiswall v. Sampson,* 55 U.S. 52 (1852).  Accordingly, the

5    *Technical Land* court held that a marshal's sale of receivership property *in custodia*

6    *legis* was "illegal and void, and passed no title."  *Id.* at 437.

7          Debtor argues that based on the majority opinion in *Mercantile Trust,* the transfer

8    of property in the possession of a receiver in a "one creditor" receivership is only

9    voidable rather than being void *ab initio*.  *Debtor's Opposition to Lloyds Motion to*

10   *Dismiss Adversary Proceeding,* 2:14-ap-01594-RK, ECF 15 at 14:18-18:28.  Thus,

11   according to Debtor, even though Kilroy may have violated injunction orders issued by

12   the state courts presiding over the receiverships prohibiting him from transferring the

13   Properties, his transfers of his ownership interests in the Properties to Debtor were

14   legally effective because the injunction orders only had *in personam* effect as to Kilroy

15   and had no effect on his power to transfer the Properties *in rem*, and thus, Debtor now

16   owns the Properties from Kilroy's transfers, which are now part of its bankruptcy estate.

17   *Debtor's Opposition to Lloyds Motion to Dismiss Adversary Proceeding,* 2:14-ap-01594-

18   RK, ECF 15 at 21:11-24:28, *citing inter alia, In re Demis,* 191 B.R. 851, 858 (Bankr. D.

19   Mont. 1996).  In this regard, the court concludes that Debtor's reliance on *Mercantile*

20   *Trust* is misplaced because to accept its premise based on an artificial distinction

21   between receiverships for the benefit of one creditor and for the benefit of all creditors

22   is flatly inconsistent with the California law of property and California law of

23   receiverships.  The reasoning of *Mercantile Trust* is unsound in drawing an artificial

24   distinction between receiverships for one creditor versus those for multiple creditors

25   because the fundamental purpose of a receivership is to determine the rights of all

26   parties to the property, including the rights of creditors and the debtor who is claiming a

27   title interest in the property.  *See, e.g., Pacific Railway Co. v. Wade,* 91 Cal. at 455

28   ("The property of the cable [car] company is *in custodia legis*.  The receiver is indifferent

1    between the parties.  His possession is the possession of the court, for the benefit of all

2    persons interested, whether named as parties in the action or not, and it cannot be

3    disturbed without the consent of the court.  No one claiming a right paramount to that of

4    the receiver can assert it in any action without the permission of the court.  **No sale can**

5    **take place, no debt can be paid, no contract can be made, which does not receive**

6    **the sanction of the court.**")(emphasis added).  The majority opinion in *Mercantile*

7    *Trust* is inconsistent with the doctrine of *in custodia legis* well-established in the

8    California case law.  *Id.; Tapscott v. Lyon*, 103 Cal. at 305-306; *City of Santa Monica v.*

9    *Gonzalez,* 43 Cal.4th at 930, 76 Cal.Rptr.3d at 502; 1 Ahart, *California Practice Guide:*

10   *Enforcing Judgments and Debts,* ¶ 4:937 at 4-170.11.

11           Debtor argues that Lloyds's motion to dismiss the first claim for relief of the

12   adversary complaint for declaratory relief that the Properties are property of its

13   bankruptcy estate is incorrect because Kilroy effectively transferred title to the

14   Properties under California law.  *Debtor's Opposition to Lloyds Motion to Dismiss*

15   *Adversary Proceeding,* 2:14-ap-01594-RK, ECF 15 at 20:14-26.  Debtor contends:

16           Under California law, a receiver has possession only; title remains in
         those who had it at the time of appointment.  *Witkin, California*
17       *Procedure, Provisional Remedies, Receivers,* § 454 (Possession and
         Control of Property)(5th ed. 2012)(citing *North v. Cecil B. De Mille*
18       *Productions,* 2 Cal.2d 55, 57, 39 P.2d 199 (1934); *see also,* 75 C.J.S.
         Receivers § 89.
19
         As a consequence, the Receiver only had possession of the
20       Properties, and Kilroy held valid legal title in the Properties at the time
         he transferred the Properties to the Debtor.  Kilroy effectively
21       transferred his interest in the Properties to the Debtor through Grant
         Deeds that were recorded at the appropriate county recorder's office,
22       and the conveyance of the Properties was completed on June 15,
         2012.  *See,* Cal. Civ. Code, § 1039, 1091.  As such, the Properties are
23       property of the estate under section 541.

24   *Id.*  As discussed above, Kilroy, as the sole owner of the Properties, attempted to

25   transfer them to Debtor after the receiver took possession pursuant to the state court

26   receivership orders.  While Kilroy may have had absolute ownership of the Properties

27   within the meaning of California Civil Code § 679 to "to dispose of [them] according to

28   his pleasure" before the court-ordered imposition of the receiverships on the Properties,

23

1  his ownership of the Properties became restricted by the receivership orders, which

2  included injunctions prohibiting transfers of the Properties and orders for the receiver to

3  assume possession of the Properties, so that his ownership under California law was

4  no longer absolute, but qualified within the meaning of California Civil Code § 680.  The

5  restrictions on Kilroy's ownership rights were authorized pursuant to the California law

6  of receiverships, including the statutory provisions in the California Code of Civil

7  Procedure §§ 564 *et seq.,* and the California common law of receiverships, including

8  the doctrine of *in custodia legis.*  Kilroy's absolute ownership of the Properties was also

9  subject to the general laws of California as set forth in California Civil Code § 679,

10  including the statutory receivership provisions in California Code of Civil Procedure §§

11  564 *et seq.*, so it cannot be said that Kilroy had the absolute right to transfer ownership

12  of the Properties, regardless of the California law of receiverships, including the

13  statutory receivership provisions which are part of the general laws.  Thus, it does not

14  necessarily follow as argued by Debtor that because Kilroy had title at the time the

15  receiver was appointed does not mean that he had the power to transfer title; as

16  discussed herein, he did not because once the Properties were in the receiver's

17  possession, they were under the control and supervision of the receivership courts

18  under the doctrine of *in custodia legis* and could not be transferred without the

19  permission of the receivership courts.  The court further concludes that Debtor's

20  reliance on the majority opinion in *Mercantile Trust* does not support its argument that

21  the transferor, Kilroy, could transfer the Properties to it legally and effectively,

22  regardless of possession of the Properties by the court-appointed receiver.  That case

23  is an aberration and does not square with the California common law governing

24  property held *in custodia legis*, including the California Supreme Court opinions in

25  *Pacific Railway Co. v. Wade* and *Tapscott v. Lyon* and general common law authority

26  such as the Supreme Court opinions in *Wiswall*  and *Hitz,* holding that property under

27  court supervision may not be transferred without court authorization.

28

1    The concurring opinion in *Mercantile Trust* by Justice Brittain, concurring in the

2    decision, discussed some of the problems with the reasoning of the majority opinion in

3    *Mercantile Trust*.  50 Cal. App. at 500-506.  Although Justice Brittain concurred with the

4    decision "in so far as it declared the execution sale to be void and in so far as it

5    restrained the appellant from hypothecating or disposing of the property involved," he

6    identified three objectionable aspects in the decision.  *Mercantile Trust Co.,* 50 Cal.

7    App. at 500.  The first objection noted by Justice Brittain is particularly relevant to the

8    issues in this case.  Justice Brittain said that the proposition "that a receivership in a

9    mortgage foreclosure case 'is but a provisional remedy for the sole and exclusive

10    benefit of the plaintiff'. . . is revolutionary in character and opens the door to vexatious

11    litigation."  *Id*. at 500-501.  Although Justice Brittain does not explicitly say so, this

12    "vexatious litigation" would likely result from the majority opinion's departure from the

13    general rules that "not only permit but require a court to protect the possession of its

14    receiver."  *Id*. at 501.  Justice Brittain's concern was prescient, as evidenced by the

15    facts here, as Kilroy and Debtor have attempted to circumvent the state-court receiver's

16    possession of the Properties.  This scenario is similar to the situation first offered by

17    Justice Brittain when he said that allowing the sale of property in the hands of a

18    receiver

19    . . . would amount to an invitation for collusive sales pending
foreclosure by which a mortgagee entitled to satisfaction upon a

20    defaulted mortgage debt might be held in litigation for years during
the pendency of appeals involving the determination of whether or

21    not buyers at such sales acquired title. The effect of the rule stated in
the opinion of the presiding justice amounts to an adjudication that

22    the appellant in the present case acquired title under the execution
sale. If the trial court on this proceeding had no power to adjudicate

23    that the appellant did acquire title by the sale, this court is without
power to adjudicate that the sale was good. Such an adjudication

24    amounts to a determination of the question of title.

25    *Id*. at 502.

26    The notion that a debtor can transfer property in the possession of a court-

27    appointed receiver holding it under court supervision *in custodia legis* to a wholly

28    controlled entity to remove it from court supervision in a receivership is a remarkable

1    proposition because it flatly inconsistent with the California law of receiverships and is,

2    in this court's opinion, ultimately erroneous.  To paraphrase the observations of the

3    Ninth Circuit in *Argonaut Shoe Co.,* the reason for the doctrine of *in custodia legis*

4    seems to be that the court having the property in its custody under the law holds it for

5    some purpose, of which that court is exclusive judge.  *See Matter of The Rubicon, Ltd.,*

6    331 F. Supp. at 1308-1309, *quoting, In re Argonaut Shoe Co.,* 187 F. at 785-786,

7    *quoting, In re Cunningham,* Fed. Cas. No. 3,478, 6 F. Cas. 958 (D. Iowa 1879).  To

8    permit property thus held to be transferred, encumbered, or otherwise alienated would

9    therefore defeat the very purpose for which it is held, and in many cases enable some

10   other court to dispose of property or money, and wholly divert it from the end or

11   purpose for which possession has been taken.  *Id.*  A conflict of jurisdiction and

12   decision would in many cases ensue.  *Id.*

13        Debtor argues that the doctrine of *in custodia legis* should not be applied

14   because there is no jurisdictional conflict.  *Debtor's Opposition to Lloyds Motion to*

15   *Dismiss Adversary Proceeding,* 2:14-ap-01594-RK, ECF 15 at 19:1-20:13.  Debtor

16   contends:

> While the Debtor does not dispute the general doctrine that property in
> the possession of a receiver appointed by a court is *in custodia legis,*
> the Debtor disputes that this doctrine is applicable to this case.  The
> primary purpose of the doctrine of *in custodia legis* is to prevent
> jurisdictional conflicts over the same property at the same time.  As
> held by the Ninth Circuit, "[t]he justification put for this doctrine of *in*
> *custodia legis* is 'the desirability of avoiding a clash between judicial
> jurisdictions which would result from any attempt to use the process of
> one to seize the assets in the control of another judicial authority.'"
> *U.S. v. Van Cauwenberghe,* 934 F.2d 1048, 1062 (9th Cir. 1991).
> Simply put, there is no jurisdictional conflict, and thus, the doctrine of *in*
> *custodia legis* is inapplicable.

> The Court has exclusive jurisdiction over property of the estate.  28
> U.S.C. § 1334(e)(1).  Moreover, it is black letter law that a bankruptcy
> case supersedes a state court receivership proceeding and a state
> court receiver would ordinarily be required to turn over the estate
> assets to a debtor-in-possession or trustee.  *See, e.g., In re Corporate*
> *and Leisure Event Productions, Inc.,* 351 B.R. 724, 728 (Bankr. D. Ariz.
> 2006)(citing *Sturges v. Crowninshield,* 17 U.S. (4 Wheat.) 122, 4 L.Ed.
> 529 (1819)(When Congress exercises its constitutional authority to
> adopt bankruptcy laws, "it preempts and supersedes all state
> bankruptcy and insolvency laws and other state law remedies that

26

might interfere with the uniform federal bankruptcy system."); *see also*
11 U.S.C. § 543.

*Id.*

The court disagrees with, and rejects, Debtor's argument that the doctrine of *in custodia legis* should not apply on grounds that there is no jurisdictional conflict. As discussed herein, the issue before the court is whether the interests in the Properties claimed by Debtor are property of its bankruptcy estate, and to resolve this issue, the court must look to state law to determine whether and to what extent the Debtor had any legal or equitable interests in property as of the commencement of the case. *In re Pettit,* 217 F.3d at 1078, *citing Butner v. United States,* 440 U.S. at 54-55. If under state law, Kilroy could not have transferred the Properties to Debtor while in the possession of the court-appointed receiver, then there were no valid transfers of the Properties to Debtor, which means that they are not property of the estate. There is no need to consider in the abstract whether there are jurisdictional conflicts between the state courts and the bankruptcy court regarding disposition of the Properties as argued by Debtor. The black letter law cited by Debtor that a bankruptcy case supersedes a state court receivership proceeding would only have applied to the situation of a debtor like Kilroy filing a bankruptcy petition for himself while the property was held in the possession of a receiver. But that situation is distinguishable from the one here, where the property in the hands of a court-appointed receiver was transferred by a debtor to another party. The first situation, where a debtor whose property is being held in the possession of a court-appointed receiver files a federal bankruptcy petition, is not a violation of state law whereas, the second situation, as here, where a debtor whose property being held in the possession of a court-appointed receiver under the doctrine of *in custodia legis,* attempts to transfer that property to another entity, is a violation of state law, i.e., California Code of Civil Procedure § 568 as well as a court injunction order.

///

1

2    **d.  The Transfers of Property in the Possession of the Receiver from Kilroy**

3    **to Debtor Are Void**

4    As discussed above, it is undisputed that Kilroy purported to transfer his interests

5    in the Properties to Debtor after the court-appointed receiver in the Los Angeles and

6    Riverside County receivership cases took possession of the Properties.  Because the

7    receiver had taken possession of the Properties, under California law, the Properties

8    were under court supervision pursuant to the receivership orders pursuant to California

9    law of receiverships under the common law doctrine of *in custodia legis* and California

10   Code of Civil Procedure § 568.  Thus, Kilroy did not have any legal authority to make

11   the purported transfers of his interests in the Properties to Debtor, the transfers were

12   therefore void ab initio, and Debtor never received any interest in the Properties.

13   Because Kilroy's attempted to transfer property held *in custodia legis* to Debtor, the

14   Properties did not become property of Debtor and its bankruptcy estate as a matter of

15   state law governing property rights under the *Butner* principle.

16   Accordingly, because the Properties are not assets or property of Debtor's

17   bankruptcy estate, Lloyds's motion to dismiss the adversary proceeding under Fed. R.

18   Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted should be

19   granted. The facts as alleged in the adversary complaint are that Debtor purportedly

20   acquired its ownership interests in the Properties through transfers by Kilroy while the

21   Properties were being held by the court-appointed receiver *in custodia legis.*  Those

22   transfers are legally ineffective under state law. The other cause of action pleaded in

23   the adversary complaint, the objection to the so-called informal proof of claim of Lloyds,

24   is premature as Lloyds has not filed a proof of claim in Debtor's bankruptcy case (most

25   likely, given the court's rulings, Lloyds would not do so because any claim would be

26   against the Properties which are determined not to be assets of Debtor's bankruptcy

27   estate and there are no facts that indicate that Lloyds would have a claim against

28   Debtor since Kilroy was the obligor on the disputed loans).  Moreover, Lloyds's motion

1   for relief from stay under 11 U.S.C. § 362(d)(1) should be granted to allow the

2   nonbankruptcy litigation in the actions before the Los Angeles and Riverside Superior

3   Courts with respect to the Properties to proceed since the automatic stay does not

4   apply to the Properties, which are not assets of Debtor's bankruptcy estate.  The state

5   courts may determine the rights of the parties to the Properties in the judicial

6   foreclosure actions.  Debtor's motions to use cash collateral (i.e., rental revenue from

7   the Properties) and to assume a lease on a unit of the North Flores Property should be

8   denied because the Properties are not assets of the bankruptcy estate.  Lloyds's motion

9   for protective order should be deemed moot because the proceedings to which the

10  discovery was being sought is resolved by the court's rulings and there is no further

11  need for discovery and a protective order.

12          The court hereby directs that the Clerk of Court enter this memorandum decision

13  in both the main bankruptcy case and in the adversary proceeding brought by Debtor

14  against Lloyds.

15          Counsel for Lloyds is hereby ordered to submit proposed final orders consistent

16  with this memorandum decision within 14 days of entry of the decision.

17          IT IS SO ORDERED.

18

19                                                ###

20

21

22

23

24  Date: November 17, 2014          _____

25                                                Robert Kwan
                                                  United States Bankruptcy Judge

26

27

28

29